**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

Ernesto Zuniga Hilario,

Petitioner,

v.

Sylvester M Ortega, Field Office Director of Enforcement and Removal Operations, San Antonio Field Office, U.S. Immigration and Customs Enforcement; Markwayne Mullin, Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD BLANCHE, U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; CHARLOTTE COLLINS, Warden of T Don Hutto Detention Center,

Respondents.

Case No. 26-cv-2890

**PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

1. Petitioner Ernesto Zuniga Hilario, a native and citizen of Mexico, challenges the actions through which U.S. Immigration and Customs Enforcement ("ICE") arrested him, detained him, and removed him to Mexico without, according to his account, providing a meaningful opportunity to understand or contest the asserted legal basis for his removal. Before his arrest, Petitioner had resided in the United States for many years with substantial family ties, including his lawful permanent resident wife, Obdulia Cervantes Vega, and four children whom he identifies as United States citizens.

2. ICE apprehended Petitioner while he was traveling with his family, they were on the way back from his wife receiving therapy. He was subsequently confined in immigration detention for several days. During that confinement, officers repeatedly asked whether he wished to depart voluntarily, and he declined. Petitioner expected an opportunity to appear before an Immigration Judge. Instead, he states that he was transported to an airport and flown to Mexico without receiving an explanation that enabled him to understand the procedure being used or meaningfully challenge its application to him.

3. Petitioner is not subject to an expedited removal order or a removal order issued by an Immigration Judge. He therefore challenges Respondents' authority to remove him to Mexico without a valid underlying removal order and without affording him the procedures required by law. Petitioner alleges that Respondents deprived him of the notice and opportunity to contest the asserted grounds for removal required by the applicable statutory, regulatory, and constitutional framework. His challenge requires examination of the particular removal mechanism employed and the safeguards applicable to that mechanism. Petitioner does not rely solely on the absence of

an Immigration Judge hearing, because certain administrative removal procedures may operate without a new hearing on removability.

4. Petitioner's removal has separated him from his wife, children, and established support system in the United States. Petitioner's wife is a lawful permanent resident, and they have three United States citizen children, Alejandro Zuniga, Omar Zuniga, and Ansoni Zuniga-Cervantes. See Exhibit 4- Spouse LPR; Exhibit 2- Birth Certificates of U.S. Citizen Children. Petitioner reports that he now experiences isolation, vulnerability, and fear for his safety in Mexico. These circumstances underscore the consequences of the alleged procedural violations and the importance of determining whether his removal was lawfully authorized and carried out.

5. Because Petitioner was removed before the filing of this action, his request presents threshold questions concerning the custody requirement of 28 U.S.C. § 2241 and the judicial-review restrictions imposed by 8 U.S.C. § 1252. Subject to establishing this Court's jurisdiction and authority to grant relief, Petitioner seeks an appropriate remedy for the alleged violations, including facilitation of his return if legally authorized and necessary to restore the opportunity for review that he alleges Respondents denied.

## JURISDICTION

6. This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq. Petitioner challenges Respondents' alleged removal of him to Mexico without a valid removal order and without the procedures required by the applicable statutory, regulatory, and constitutional framework.

7. Before his removal, Petitioner was in Respondents' physical custody and, according to his account, was confined at the T. Don Hutto detention facility in Taylor, Texas. Petitioner is now in

Mexico and does not allege that he remains physically detained at that facility. *See* Exhibit 3-Petitioner's Declaration.

8. Petitioner invokes 28 U.S.C. § 1331 for his claims arising under federal law and seeks habeas relief under 28 U.S.C. § 2241(c)(3), subject to establishing the statute's custody requirement. Because his removal preceded the filing of this action, his former detention alone does not establish habeas jurisdiction. See Merlan v. Holder, 667 F.3d 538, 539 (5th Cir. 2011).

9. Petitioner maintains that he was not subject to an expedited removal order or an order issued by an Immigration Judge. He accordingly alleges that Respondents removed him without a valid underlying order. Whether this Court may adjudicate that claim requires consideration of the jurisdictional restrictions imposed by 8 U.S.C. § 1252, including §§ 1252(a)(5), (b)(9), and (g), and, if an expedited removal order is identified, §§ 1252(a)(2)(A) and (e).

10. To the extent this Court possesses subject-matter jurisdiction, Petitioner requests declaratory and appropriate equitable relief, including relief under 28 U.S.C. §§ 2201–2202 and any writ necessary or appropriate in aid of the Court's jurisdiction under 28 U.S.C. § 1651. The Declaratory Judgment Act and All Writs Act do not independently confer subject-matter jurisdiction. Petitioner also invokes the Suspension Clause, U.S. Const. art. I, § 9, cl. 2, to the extent applicable to a properly supported constitutional challenge to restrictions on judicial review.

**VENUE**

11. For any independently cognizable civil claims against federal officers or agencies acting in their official capacities, Petitioner asserts venue in the Western District of Texas under 28 U.S.C. § 1391(e)(1)(B), based on his alleged detention in Taylor, Texas, and the challenged actions associated with that detention. Taylor is located in Williamson County, within the Austin Division of the Western District of Texas.

12. Petitioner's venue allegations rest on events preceding his removal and do not assert that he remains detained in this District. The location of his former detention does not independently satisfy the custody or territorial requirements applicable to a petition under 28 U.S.C. § 2241. Any request for habeas relief therefore requires a separately supported jurisdictional basis notwithstanding the asserted venue for his civil claims.

**REQUIREMENTS OF 28 U.S.C. § 2243, WRIT OF HABEAS CORPUS ISSUANCE, RETURN, HEARING, AND DECISION**

13. The Court should grant the petition for writ of habeas corpus forthwith because Petitioner is not subject to mandatory detention as a matter of law, and the continued detention imposed through the automatic stay under 8 C.F.R. § 1003.19(i)(2), solely by virtue of the government's appeal, violates the Due Process Clause of the Fifth Amendment. Continued detention under these circumstances is arbitrary, excessive, and unlawful, warranting immediate habeas relief.

14. The Court must also grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

15. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## PARTIES

16. Petitioner Ernesto Zuniga Hilario is a citizen of Mexico who had been in immigration detention since September 5, 2026 to September 16, 2026.

17. Respondent Sylvester M Ortega is the Director of the San Antonio Field Office of ICE's Enforcement and Removal Operations division. As such, Sylvester M Ortega is Petitioner's immediate custodian and is responsible for Petitioner's detention and removal. He is named in his official capacity.

18. Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security. He is responsible for the implementation and enforcement of the Immigration and Nationality Act (INA), and oversees ICE, which is responsible for Petitioner's detention. Mr. Mullin has ultimate custodial authority over Petitioner and is sued in her official capacity.

19. Respondent Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

20. Respondent Todd Blanche is the Attorney General of the United States. He is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency. He is sued in her official capacity.

21. Respondent Executive Office for Immigration Review (EOIR) is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings.

22. Respondent Charlotte Collins is the Warden of the T Don Hutto Detention Center in Taylor, Texas, where Petitioner is detained. He had immediate physical custody of Petitioner

and resides in the judicial district of the United States Court for the Western District of Texas, Austin Division. He is sued in his official capacity.

**LEGAL FRAMEWORK**

23. A habeas petitioner ordinarily must satisfy the custody requirement when the petition is filed. *Maleng v. Cook*, 490 U.S. 488, 490–92 (1989). Prior physical detention and the continuing collateral consequences of government action do not, standing alone, establish present custody. Because Petitioner was removed before filing this action, his former confinement cannot independently satisfy 28 U.S.C. § 2241.

24. In *Merlan v. Holder*, 667 F.3d 538, 539 (5th Cir. 2011), the Fifth Circuit held that a petitioner already removed to Mexico did not satisfy the habeas custody requirement. The court explained that the petitioner had demonstrated neither extreme circumstances surrounding his removal nor restraints greater than those ordinarily experienced by noncitizens abroad who lack permission to enter the United States. *Merlan* therefore presents a substantial jurisdictional obstacle to a petition filed after removal.

25. Other courts have recognized a narrow basis for post-removal habeas relief under exceptional circumstances. In *Singh v. Waters*, 87 F.3d 346, 349–50 (9th Cir. 1996), immigration officials removed the petitioner despite an Immigration Judge's stay and interfered with his access to counsel. The court granted relief permitting his return for further immigration proceedings. Subsequently, *Miranda v. Reno*, 238 F.3d 1156, 1158–59 (9th Cir. 2001), distinguished *Singh* as involving extreme circumstances and reaffirmed that ordinary removal does not establish continuing habeas custody.

26. These authorities require examination of the circumstances surrounding removal, rather than an assumption that every allegedly unlawful removal constitutes continuing custody.

Although *Merlan* considered the absence of extreme circumstances, it did not affirmatively establish a general exception applicable whenever a petitioner alleges procedural violations. *Singh* is persuasive rather than binding authority in this Circuit, and its exceptional facts must be distinguished from a claim resting solely on the absence of a hearing or the consequences of family separation.

27. Petitioner maintains that Respondents removed him without a valid underlying removal order and without a meaningful opportunity to contest their authority. That allegation bears on the legality of the removal and may support an argument distinguishing a case involving execution of an existing final order. It does not, by itself, establish custody at filing or demonstrate circumstances equivalent to those in *Singh*. Any reliance on an extreme-circumstances theory must therefore identify the specific government conduct that allegedly prevented meaningful access to review and explain why that conduct satisfies the applicable jurisdictional requirements.

28. The custody requirement is also separate from the statutory restrictions on review of removal orders. *Merlan* independently concluded that the REAL ID Act barred district-court review of the final removal order. See also *Rosales v. Bureau of Immigration & Customs Enforcement*, 426 F.3d 733, 736 (5th Cir. 2005); 8 U.S.C. § 1252(a)(5). Section 1252(g) must additionally be considered to the extent the claims arise from execution of a removal order. Because *Singh* predates the REAL ID Act, it does not independently resolve these statutory restrictions.

29. Accordingly, Petitioner must establish both a legally sufficient basis for satisfying the post-removal custody requirement and a basis for adjudicating his claims notwithstanding the applicable restrictions in 8 U.S.C. § 1252. His allegation that no removal order existed requires

consideration of whether Respondents acted outside an authorized removal procedure, but it cannot substitute for the separate showing necessary to establish this Court's jurisdiction.

## FACTS

30. Petitioner Ernesto Zuniga Hilario is a native and citizen of Mexico, born on November 7, 1971, in Actopan, Hidalgo, Mexico. *See* Exhibit 3- Petitioner's Declaration.

31. Petitioner last entered the United States without inspection in approximately 2008 and thereafter resided in the United States until his arrest and removal. Before his detention, he lived near Lometa, Texas, and maintained substantial family ties in the United States. *See* Exhibit 3- Petitioner's Declaration.

32. Petitioner acknowledges prior encounters with immigration authorities while attempting to enter the United States. He maintains that he was not subject to an expedited removal order or a removal order issued by an Immigration Judge and that he never appeared before an Immigration Judge during those encounters.

33. Petitioner is married to Obdulia Cervantes Vega, who has been a lawful permanent resident since January 12, 1996. *See* Exhibit 4- Spouse LPR.

34. Petitioner is the father of four United States citizen children: Alejandro Zuniga, born on December 26, 2003; Omar Zuniga, born on September 20, 2005; Ansoni Zuniga-Cervantes, born on June 28, 2011; and Lizbeth Zuniga Cervantes. His children were born in Texas and remain in the United States. *See* Exhibit *2*- Birth Certificates of U.S. Citizen Children.

35. Immigration officers apprehended Petitioner while he was traveling with his wife and children to take his son to a therapy appointment. He was subsequently taken into ICE custody and confined at the T. Don Hutto detention facility in Taylor, Texas, for several days. *See* Exhibit 3- Petitioner's Declaration.

36. During his detention, officers repeatedly asked Petitioner whether he wished to depart voluntarily. Petitioner declined because he wanted an opportunity to present his case and expected to receive a hearing date before an Immigration Judge. *See* Exhibit 3- Petitioner's Declaration.

37. Petitioner states that he was not afforded an opportunity to appear before an Immigration Judge or meaningfully contest the asserted basis for his removal. Instead, without an explanation that enabled him to understand why he was being removed despite declining voluntary departure, he was placed on a bus, transported to an airport, and flown to Mexico City. *See* Exhibit 3- Petitioner's Declaration.

38. Petitioner maintains that his departure was involuntary and that ICE removed him notwithstanding his desire to remain in the United States and pursue his case through the immigration process.

39. Since his removal, Petitioner has remained in Mexico, separated from his wife, children, and established support system in the United States. He reports that he lacks meaningful assistance or protection in Mexico and experiences persistent fear, isolation, and vulnerability. *See* Exhibit 3- Petitioner's Declaration.

40. Petitioner seeks an opportunity to return to the United States, reunite with his family, and obtain meaningful review of the asserted legal basis for his removal. He states that he poses no danger to the community or risk of flight and is willing to comply with lawful reporting requirements and other reasonable conditions if permitted to return.

## THE COURT MAY REVIEW PETITIONER'S CHALLENGE TO REMOVAL ALLEGEDLY CARRIED OUT WITHOUT A VALID ORDER.

### A. Petitioner's Post-Removal Filing Requires a Specific Basis for Satisfying the Habeas Custody Requirement.

41. Petitioner recognizes that habeas jurisdiction ordinarily requires custody at the time the petition is filed. *Maleng v. Cook*, 490 U.S. 488, 490–92 (1989). Although custody needs not consist of physical confinement, prior detention and the collateral consequences of government action do not independently satisfy that requirement. Petitioner therefore does not contend that his former ICE detention, separation from his family, or inability to return to the United States, standing alone, establishes jurisdiction under 28 U.S.C. § 2241.

42. The controlling adverse authority is *Merlan v. Holder*, 667 F.3d 538, 539 (5th Cir. 2011). There, the Fifth Circuit held that a petitioner already removed to Mexico had not established habeas custody. The court adopted the reasoning of decisions concluding that a person deported pursuant to a final removal order ordinarily is not in custody and explained that Merlan had shown neither extreme circumstances surrounding his removal nor restraints in Mexico beyond those experienced by other noncitizens lacking permission to enter the United States. *Id.*

43. Petitioner's allegations present a potentially material distinction. He maintains that no expedited removal order or Immigration Judge's removal order authorized his deportation. He states that he repeatedly declined voluntary departure, expected an opportunity to present his case, and was nevertheless transported to Mexico without a meaningful opportunity to understand or contest the asserted basis for removal. *See* Exhibit 3- Petitioner's Declaration. Thus, his claim concerns an alleged involuntary expulsion without an underlying removal order, rather than merely disagreement with the adjudication of an identified final order.

44. That distinction warrants consideration, but it does not eliminate the custody requirement. *Merlan* did not hold that every allegedly unlawful removal constitutes continuing custody or affirmatively establish a general exception whenever procedural violations are alleged. Petitioner accordingly submits that the circumstances of his removal must be examined under the limits recognized in *Merlan*, rather than treating the allegation of an absent order as independently sufficient to establish jurisdiction.

45. The Ninth Circuit's decisions illustrate the narrow nature of the potentially applicable exception. In *Singh v. Waters*, 87 F.3d 346, 349–50 (9th Cir. 1996), immigration officials removed the petitioner in violation of an Immigration Judge's stay and interfered with his statutory right to counsel. The court directed relief permitting his return for further immigration proceedings. In *Miranda v. Reno*, 238 F.3d 1156, 1158–59 (9th Cir. 2001), the court distinguished *Singh* as involving extreme circumstances and rejected jurisdiction where the petitioner had been removed pursuant to an Immigration Judge's order following a hearing at which counsel represented him.

46. Petitioner does not allege that Respondents violated an operative stay or interfered with retained counsel, because the present factual account does not establish either circumstance. He instead requests consideration of whether the alleged absence of any underlying removal order, together with the asserted denial of a meaningful opportunity to contest removal, presents circumstances materially different from ordinary execution of a final order. *Singh* supports examination of exceptional government conduct; it does not establish that Petitioner's allegations necessarily satisfy the exception, and it is persuasive rather than binding authority in this Circuit.

47. Accordingly, Petitioner's post-removal jurisdictional theory rests on the particular manner in which Respondents allegedly deprived him of access to the applicable legal process, not

on family hardship or the ordinary consequences of deportation. Petitioner bears the burden of establishing facts sufficient to distinguish *Merlan*. The Court must resolve that threshold question independently of whether Respondents' conduct ultimately violated the INA or the Constitution.

48. **B. Petitioner Challenges the Absence of Legal Authority for His Removal, Rather Than Seeking Review of an Identified Final Removal Order.**

49. The custody requirement is distinct from the statutory restrictions governing judicial review of removal orders. Section 1252(a)(5) generally makes a petition for review in the appropriate court of appeals the exclusive means of reviewing an order of removal. Consistent with that provision, *Merlan* independently held that the district court lacked jurisdiction to review the final removal order under the REAL ID Act. 667 F.3d at 539; *see also Rosales v. Bureau of Immigration & Customs Enforcement*, 426 F.3d 733, 736 (5th Cir. 2005). Petitioner does not contend that characterizing a challenge as constitutional or regulatory permits a district court to disregard that restriction.

50. Petitioner's allegation is that no underlying removal order existed, not simply that an existing order was legally erroneous. He does not ask this Court to reassess an Immigration Judge's determination of removability, reverse a denial of immigration relief, or substitute its judgment for an identified administrative adjudication. He challenges whether Respondents possessed an order or other statutory authority permitting them to carry out his involuntary removal at all. *See* Exhibit 3- Petitioner's Declaration. The distinction between the absence of an order and an attack on the validity of an existing order is therefore central to determining whether § 1252(a)(5) governs the requested review.

51. Section 1252(b)(9) must also be addressed. That provision channels questions of law and fact arising from actions or proceedings brought to remove a noncitizen into review of a

final order and restricts district-court review of those questions. Petitioner submits that his allegation requires consideration of whether Respondents acted through an authorized removal process or instead expelled him without the administrative predicate on which the statutory review scheme ordinarily operates. Nevertheless, the alleged absence of an identified order does not automatically place every claim beyond § 1252(b)(9); the Court must examine the substance of the challenged conduct and the relief requested.

52. Section 1252(g) separately limits jurisdiction over claims arising from decisions or actions to commence proceedings, adjudicate cases, or execute removal orders. The Supreme Court has explained that the provision addresses those three specified actions rather than every government act associated with immigration enforcement. *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999). Petitioner submits that removal without any underlying order is distinguishable from execution of a removal order within the statutory language. That contention requires examination of whether an order actually existed and whether his claims, in substance, arise from its execution.

53. Petitioner acknowledges that alleging an unlawful execution of an existing order is different from alleging that no order existed. If Respondents establish an underlying order, the Court must determine whether the claims challenge that order, its execution, or some independently reviewable conduct. Likewise, if Respondents identify an expedited removal order, the additional restrictions in §§ 1252(a)(2)(A) and (e) must be considered. The jurisdictional analysis cannot rest solely on Petitioner's designation of his claim.

54. Finally, *Singh* predates the REAL ID Act and cannot independently overcome the modern restrictions in § 1252. Even if Petitioner establishes a basis for satisfying the custody requirement, he must separately demonstrate that the particular claims and requested relief fall

within this Court's statutory authority. Petitioner therefore requests review of the threshold allegation that Respondents removed him without an underlying order, subject to establishing both habeas custody and a basis for adjudication notwithstanding the applicable provisions of § 1252.

## CLAIMS FOR RELIEF

### COUNT I
### REMOVAL WITHOUT STATUTORY AUTHORITY
### Violation of the Immigration and Nationality Act

55. Petitioner incorporates the preceding factual allegations and jurisdictional allegations as though fully set forth herein.

56. The Immigration and Nationality Act establishes the procedures through which the Government may determine removability and carry out removal. Unless the INA specifies an alternative procedure, proceedings under INA § 240 constitute the exclusive procedure for determining whether a noncitizen may be admitted to or removed from the United States. 8 U.S.C. § 1229a(a)(3). Any alternative removal mechanism must satisfy the statutory predicates governing its application.

57. Petitioner maintains that he was not subject to an expedited removal order or a removal order issued by an Immigration Judge. Although he acknowledges prior encounters with immigration authorities, he states that those encounters did not result in an order of removal. *See* Exhibit 3- Petitioner's Declaration. Accordingly, Petitioner alleges that Respondents lacked an underlying order authorizing his removal to Mexico.

58. Nor could Respondents lawfully invoke reinstatement solely because Petitioner previously encountered immigration authorities or subsequently entered without inspection. Reinstatement under 8 U.S.C. § 1231(a)(5) requires an existing prior removal order and

satisfaction of the statutory conditions for reinstating that order. Petitioner alleges that no such prior order existed.

59. Petitioner repeatedly declined voluntary departure and sought an opportunity to present his case before an Immigration Judge. Nevertheless, Respondents transported him to an airport and removed him to Mexico. *See* Exhibit 3- Petitioner's Declaration. Petitioner alleges that his departure was involuntary and was not authorized by his consent to voluntary departure.

60. On these facts, Petitioner alleges that Respondents carried out his removal without a valid underlying removal order and without establishing the applicability of another removal procedure authorized by the INA. His entry without inspection and prior immigration encounters did not, standing alone, authorize his involuntary removal outside the governing statutory framework.

61. Respondents' alleged removal of Petitioner without the necessary statutory predicate exceeded their authority under the INA. The resulting injury is his involuntary displacement to Mexico and separation from his family and established life in the United States.

62. Subject to establishing this Court's jurisdiction and remedial authority, Petitioner requests a declaration that his removal was unauthorized under the INA and appropriate corrective relief, including facilitation of his return if legally authorized and necessary to restore his opportunity to pursue the applicable immigration process.

## COUNT III
## VIOLATION OF PROCEDURAL DUE PROCESS
## Fifth Amendment to the United States Constitution

63. Petitioner incorporates the preceding factual and jurisdictional allegations as though fully set forth herein.

64. The Fifth Amendment prohibits the Government from depriving any person of liberty without due process of law. Its protections extend to noncitizens within the United States, including those whose presence is unlawful. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). A noncitizen who has entered the United States and become part of its population may not be arbitrarily arrested and deported without an opportunity, appropriate to the circumstances, to be heard concerning his right to remain. *Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903).

65. Petitioner's claim concerns the procedures Respondents employed while he was present in the United States and in their custody. Before his removal, he had resided in the United States for many years and maintained substantial family ties, including his lawful permanent resident wife and four United States citizen children. *See* Exhibit 3- Petitioner's Declaration; Exhibit 4- Spouse LPR; Exhibit 2- Birth Certificate of U.S. Citizen Children. His involuntary removal implicated significant interests in liberty and the opportunity to contest the Government's asserted authority to expel him.

66. Petitioner alleges that Respondents failed to provide an explanation sufficient to identify the legal and factual basis for his removal or a meaningful opportunity to contest that basis before transporting him to Mexico. During his detention, Petitioner repeatedly declined voluntary departure and expected an opportunity to present his case before an Immigration Judge. Nevertheless, Respondents placed him on a bus, transported him to an airport, and removed him without affording the requested opportunity for review. *See* Exhibit 3- Petitioner's Declaration

67. Petitioner does not contend that every removal procedure constitutionally requires a new hearing before an Immigration Judge. He alleges that Respondents denied him the notice and opportunity to respond required by the procedure lawfully applicable to his circumstances. His

refusal of voluntary departure further demonstrates that he sought to contest removal rather than consent to departure. *See* Exhibit 3- Petitioner's Declaration.

68. Where the procedural balancing framework applies, due process requires consideration of the private interest affected, the risk of erroneous deprivation and probable value of additional safeguards, and the Government's interests and associated administrative burdens. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Here, meaningful notice identifying the asserted removal authority and an opportunity to contest its factual predicates would have permitted Petitioner to address whether an underlying order existed, whether it applied to him, and whether the statutory conditions for the procedure employed were satisfied. Those safeguards bear directly on the risk of an erroneous removal.

69. The alleged deprivation caused concrete prejudice by preventing Petitioner from presenting his contention that he was not subject to an expedited removal order or an order issued by an Immigration Judge before his removal was carried out. *See* Exhibit 3- Petitioner's Declaration. If that contention is established and no alternative statutory procedure authorized removal, an opportunity to raise it could have materially affected whether Respondents could lawfully remove him through the mechanism they employed. Petitioner's claim therefore concerns the loss of an opportunity to contest a potentially dispositive predicate for removal, rather than the absence of procedures unrelated to the outcome.

70. By allegedly removing Petitioner without the notice and meaningful opportunity to contest removal required under the applicable framework, Respondents deprived him of procedural due process. His completed removal does not erase the alleged violation, although his entitlement to judicial review remains subject to the custody requirement and the jurisdictional restrictions addressed elsewhere in this Petition.

71. Subject to establishing this Court's jurisdiction and remedial authority, Petitioner requests a declaration that Respondents violated the Fifth Amendment and appropriate corrective relief restoring the opportunity for lawful review that he alleges was denied, including facilitation of his return if legally authorized and necessary to provide that remedy.

## COUNT III
## FAILURE TO COMPLY WITH BINDING REGULATIONS
### Accardi Doctrine; Alternatively, Violation of 8 C.F.R. § 241.8(b)

72. Petitioner incorporates the preceding factual and jurisdictional allegations as though fully set forth herein.

73. Federal agencies must comply with binding regulations governing the exercise of their authority. Under *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954), immigration officials may not disregard operative regulations protecting an individual's right to the prescribed administrative process.

74. Petitioner maintains that no prior removal order authorized his removal. Alternatively, to the extent Respondents contend that they reinstated a prior order under 8 U.S.C. § 1231(a)(5), their actions were subject to the procedural requirements of 8 C.F.R. § 241.8(b). This alternative claim does not concede that a prior order existed, or that Petitioner was eligible for reinstatement.

75. Section 241.8(b) requires an immigration officer who determines that a person is subject to reinstatement to provide written notice of that determination and advise the person of the opportunity to make a written or oral statement contesting it. If the person wishes to make a statement, the officer must permit it and consider whether it warrants reconsideration of the determination.

76. Petitioner alleges that Respondents removed him without providing a meaningful explanation of the asserted removal authority or an opportunity to contest its application. He

repeatedly declined voluntary departure because he wanted to present his case, but was nevertheless transported to Mexico. *See* Exhibit 3- Petitioner's Declaration. To the extent Respondents relied on reinstatement, Petitioner alleges that they failed to afford the notice and opportunity to contest required by § 241.8(b).

77. The alleged regulatory violation deprived Petitioner of the prescribed opportunity to raise his contention that no prior removal order existed and to contest whether reinstatement lawfully applied to him. *See* Exhibit 3- Petitioner's Declaration. Those objections concern predicates essential to reinstatement. If established, they could have materially affected whether Respondents could remove him through that procedure.

78. This count concerns compliance with a specific binding regulation, independently of Count I's challenge to statutory authority and Count II's constitutional challenge. Petitioner does not assert that § 241.8(b) required a new Immigration Judge hearing on removability. He alleges that, if reinstatement was employed, Respondents failed to provide the administrative safeguards the regulation expressly requires.

79. Subject to establishing this Court's jurisdiction and remedial authority, Petitioner requests a declaration that any reinstatement carried out without compliance with § 241.8(b) was procedurally unlawful and appropriate corrective relief restoring the opportunity to contest reinstatement, including facilitation of his return if legally authorized and necessary to provide that remedy.

**INJUNCTIVE RELIEF**

80. Petitioner incorporates the preceding factual allegations, jurisdictional allegations, and claims for relief as though fully set forth herein.

81. Petitioner requests a preliminary injunction requiring Respondents to facilitate his return to the United States to restore the opportunity for lawful review that he alleges was denied before his removal. Because Petitioner has already been removed to Mexico, the requested relief concerns corrective action following removal rather than an injunction preventing a future departure or ordering release from present domestic detention.

82. A preliminary injunction requires a showing of likely success on the merits, likely irreparable harm absent preliminary relief, a favorable balance of equities, and consistency with the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Because the requested order would require affirmative action, Petitioner also acknowledges the heightened scrutiny applicable to mandatory preliminary injunctions. Such relief should issue only when the facts and law clearly favor the moving party. *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976).

**A. Likelihood of Success**

83. Petitioner maintains that Respondents removed him without an expedited removal order, an order issued by an Immigration Judge, or another established statutory basis authorizing the procedure employed. He further alleges that he repeatedly declined voluntary departure and was nevertheless removed without a meaningful opportunity to understand or contest Respondents' asserted authority. *See* Exhibit 3- Petitioner's Declaration. If established, those facts support his claims that Respondents acted outside the applicable statutory framework and denied required procedural protections.

84. Petitioner recognizes that success on the merits alone cannot support an injunction unless this Court possesses jurisdiction over the claims and authority to grant the requested remedy. His application therefore depends on establishing a legally sufficient basis for overcoming

the post-removal custody obstacle identified in *Merlan v. Holder*, 667 F.3d 538, 539 (5th Cir. 2011), and addressing the applicable restrictions in 8 U.S.C. § 1252. Neither the requested injunction nor the allegation that removal was unlawful independently supplies that jurisdiction.

**B. Irreparable Harm**

85. Petitioner remains in Mexico, separated from his lawful permanent resident wife, his children, and his established support system in the United States. He reports persistent fear, isolation, vulnerability, and a lack of meaningful assistance or protection in Mexico. *See* Exhibit 3- Petitioner's Declaration. He submits that continued separation during this litigation causes ongoing personal and familial harm that cannot be fully repaired through a later monetary award.

86. Petitioner also alleges that his removal deprived him of the opportunity to contest the asserted legal basis for expulsion before it was carried out. He requests return-related relief insofar as his presence is necessary to restore that opportunity and prevent additional irreparable harm while his claims are adjudicated. This request requires a concrete showing that such harm is likely before a decision on the merits; it does not rest solely on the possibility of future injury or a presumption that every alleged constitutional violation establishes irreparable harm. *See Winter*, 555 U.S. at 22.

**C. Balance of Equities and Public Interest**

87. Petitioner submits that the balance of equities favors a narrowly tailored order restoring access to the legal process allegedly denied. His requested return would not determine his ultimate eligibility for immigration relief or foreclose lawful proceedings under the INA. It would permit the asserted basis for his removal to be addressed through the applicable procedures.

88. The Government retains a substantial interest in enforcing immigration law and controlling admission to the United States. Petitioner nevertheless submits that those interests must

be weighed against the alleged removal of a longstanding resident without an underlying order and without the required opportunity to contest removal. The public interest favors both lawful immigration enforcement and compliance with the statutory and constitutional limits governing executive action.

**D. Scope of the Requested Relief**

89. Corrective relief following removal is not categorically unavailable. In *Noem v. Abrego Garcia*, No. 24A949 (U.S. Apr. 10, 2025), the Supreme Court approved a requirement that the Government facilitate release from foreign custody and ensure that the case was handled as it would have been absent the improper removal, while requiring clarification of broader remedial language. Petitioner invokes that decision for the limited proposition that an appropriate remedy may require affirmative government action following unlawful removal, not as an independent source of jurisdiction or an unconditional entitlement to admission.

90. Upon establishing jurisdiction and satisfying the requirements for mandatory preliminary relief, Petitioner respectfully requests an order directing Respondents to take the lawful steps within their authority necessary to facilitate his return to the United States for restoration of the applicable immigration process. Those steps should include coordinating necessary travel documentation and arrangements and identifying the lawful mechanism through which his return can occur.

91. Petitioner further requests that Respondents submit a proposed implementation plan within a short period fixed by the Court and provide status reports concerning their compliance. The requested order should be tailored to remedy the proven procedural injury and should not predetermine lawful custody decisions or the ultimate disposition of any immigration proceedings following his return.

## CONCLUSION

92. Petitioner Ernesto Zuniga Hilario alleges that Respondents involuntarily removed him to Mexico without a valid underlying removal order and without affording him the notice and meaningful opportunity to contest removal required by law. He repeatedly declined voluntary departure and sought an opportunity to present his case, but was nevertheless removed and separated from his wife, children, and established life in the United States.

93. For the reasons stated above, Petitioner respectfully requests that this Court exercise jurisdiction to the extent authorized by law, adjudicate his statutory, constitutional, and alternative regulatory claims, and grant appropriate relief. Upon establishing jurisdiction and entitlement to relief, Petitioner requests an order requiring Respondents to facilitate his return to the United States insofar as necessary to restore the opportunity for lawful review that he alleges was denied.

## RELIEF SOUGHT

**WHEREFORE**, Petitioner respectfully requests that this Court grant the following relief:

A. Direct Respondents to respond promptly to the Petition and provide the administrative records identifying the asserted authority for Petitioner's removal, including any underlying removal order, reinstatement determination, notices, proof of service, and purported waiver or consent to departure;

B. Determine that it possesses jurisdiction over the claims properly before it and grant the Petition for Writ of Habeas Corpus to the extent authorized by law;

C. Declare, upon adjudication of the merits, that Petitioner's removal without the necessary statutory authority or required procedural protections violated the INA and the Fifth Amendment;

D. Alternatively, if Respondents relied on reinstatement, declare that their failure to comply with the applicable requirements of 8 C.F.R. § 241.8(b) violated binding regulations;

E. Upon satisfaction of the applicable requirements, issue preliminary and permanent injunctive relief directing Respondents to take the lawful steps within their authority necessary to facilitate Petitioner's return to the United States and restore the opportunity for review denied by the unlawful removal;

F. Require Respondents to submit an implementation plan within a period fixed by the Court and provide status reports concerning compliance with any return-related order;

G. Award reasonable costs and attorney's fees to the extent authorized by applicable law; and

H. Grant such other and further relief as the Court deems just and proper.

**PRAYER FOR EXPEDITED CONSIDERATION** Pursuant to 28 U.S.C. § 2243, to the extent applicable, Petitioner Ernesto Zuniga Hilario respectfully requests expedited consideration of this Petition, including the threshold jurisdictional questions and his request for injunctive relief. Petitioner has already been removed to Mexico and remains separated from his lawful permanent resident wife and United States citizen children. He reports persistent fear, isolation, and a lack of meaningful support in Mexico. Prompt consideration is necessary to determine the legality of his removal and whether corrective relief, including facilitation of his return, is authorized and warranted.

DATED 13th of October 2026.

Respectfully submitted,

/s/ Xavier Vicente Chavez

XAVIER VICENTE CHAVEZ, OSB #1601193
State Bar # 24069495
xavier@xavierlawfirm.com
Xavier Law Firm
25775 Oak Ridge Dr. Suite 120
The Woodlands, TX 77380
(281) 296-3741

/s/ Nelly Carolina Sanchez Estrada
Nelly Sanchez Estrada, SDTX #3947576
State Bar # 24135331
xavier@xavierlawfirm.com
Xavier Law Firm
25775 Oak Ridge Dr. Suite 120
The Woodlands, TX 77380
(281) 296-3741

*Counsels for Petitioner*

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, Ernesto Zuniga Hilario, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 13th day of October 2026.

/s/ Xavier Vicente Chavez
Counsel for Petitioner
xavier@xavierlawfirm.com
Xavier Law Firm
25775 Oak Ridge Dr. Suite 120
The Woodlands, TX 77380
(281) 296-3741(281) 296-3741

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2026, I caused a true and correct copy of the foregoing Petition for Writ of Habeas Corpus and all accompanying exhibits to be served by certified mail, return receipt requested, on the following:

U.S. Attorney's Office for the Southern District of Texas
USATXS.CivilNotice@usdoj.gov
Attn: Civil Process Clerk
1000 Louisiana St., Suite 2300,
Houston, TX 77002.

Warden, T Don Hutto Detention Center
Charlotte Collins
1001 Welch St
Taylor, Texas 76574

Service on the United States Attorney constitutes service on all named federal Respondents in this matter, and service has also been made directly on the Warden as Petitioner's immediate custodian.

Dated this 13th day of September 2026.

/s/ Xavier Vicente Chavez
Counsel for Petitioner
xavier@xavierlawfirm.com
Xavier Law Firm
25775 Oak Ridge Dr. Suite 120
The Woodlands, TX 77380
(281) 296-3741(281) 296-3741

**859165**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

**ERNESTO ZUNIGA HILARIO,**
Petitioner,

v.

Sylvester M Ortega, Field Office Director of Enforcement and Removal Operations, San Antonio Field Office, Immigration and Customs Enforcement; Markwayne Mullin, Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD BLANCHE, U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; CHARLOTTE COLLINS, Warden of T Don Hutto Detention Center,

Respondents.

Case No. 26-cv-2890

**INDEX OF EXHIBITS**

**Exhibit** **Pages**

1. Printout from ICE Online Detainee Locator System showing Petitioner's previous detention, retrieved from https://locator.ice.gov........................................................30-31
2. Birth Certificates of U.S. citizen children……………………….........................32-36
3. Petitioner's Declaration...................................................................................37-41
4. Spouse LPR.....................................................................................................42-43
5. Criminal Background Check ..........................…….............……………………44-46
6. Character Reference Letters............................................................................47-58